IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :
        v.                        :   Case 00-CR-162-01
                                  :
JAMES HALLOWAY,             :
        Defendant              :

**FILED**
HARRISBURG, PA

TRANSCRIPT OF PROCEEDINGS

MAY 12 2003

GUILTY PLEA

MARY E. D'ANDREA, CLERK
Per _____
      Deputy Clerk

BEFORE:   HON. SYLVIA H. RAMBO, Judge

DATE:     September 8, 2000

PLACE:    Courtroom Number Three
          Federal Building
          Harrisburg, Pennsylvania


COUNSEL PRESENT:

WILLIAM BEHE, Assistant United States Attorney
   For - United States of America


FRANK ARCURI, Esquire
   For - Defendant


Vicki L. Fox, RMR
Official Reporter

1    MR. BEHE: Your Honor, this next matter is that
2    of United States of America versus James Halloway which is
3    at Criminal Number 000-162.
4        May the record reflect that Mr. Halloway is
5    present before you along with his counsel Mr. Arcuri.
6        He is here pursuant to a plea agreement that was
7    filed on August 16th of this year which calls for
8    Mr. Halloway to withdraw his plea of not guilty as to Count
9    III of the indictment which charges a conspiracy to
10   distribute one hundred kilograms or more of marijuana.
11       He is here to enter a plea of guilty to that
12   charge.
13       THE COURT: Mr. Halloway, before I can accept
14   your change of plea, it will be necessary for me to
15   establish for the record that you understand your rights and
16   the consequences of your plea.
17       You will be placed under oath, and I will ask
18   certain questions of you. You should be advised that if you
19   give me any false answers, you could be subject to further
20   prosecution for perjury or false swearing; do you understand
21   that?
22       THE DEFENDANT: Yes, ma'am.
23       THE COURT: Do you further understand that if you
24   went to trial in this matter, you could not be forced to
25   take the witness stand to testify against yourself.

Halloway - Guilty Plea                                                3

But because you are entering a plea of guilty to Count III of this indictment, I must establish your involvement in that charge. I will ask questions of you to which you must respond; thereby, giving up your right against self-incrimination. Do you understand that?

THE DEFENDANT: Yes, ma'am.

JAMES HALLOWAY, called as a witness, being duly sworn, testified as follows:

BY THE COURT:

Q   How old are you?

A   30.

Q   How far have you gone in school?

A   Twelfth grade.

Q   Do you fully read and write English?

A   Yes, ma'am.

Q   Have you taken any drugs or alcohol before coming into court today?

A   No, ma'am.

Q   Are you undergoing any psychological or psychiatric counseling of any kind?

A   No, ma'am.

THE COURT: Mr. Arcuri, are you court-appointed?

MR. ARCURI: I am court-appointed, Your Honor.

Halloway - Guilty Plea  4

1  BY THE COURT:

2  Q    You have been represented by Mr. Arcuri in this
3  matter.  Are you satisfied with the representation you have
4  received from him to date?
5  A    Yes, ma'am.
6  Q    Now, Mr. Halloway, you are entitled to a jury trial in
7  this matter in which you through counsel would select a jury
8  consisting of twelve people.
9        At a trial, you would have the right through
10 counsel to cross-examine any witnesses the government would
11 present.  You, in turn, would have the right to subpoena
12 witnesses and evidence on your own behalf; although, you are
13 not required to do so.
14       Any finding of guilt by a jury would have to be
15 unanimous.  That is all twelve jurors would have to agree.
16 If you give up your right to a jury trial, you give up your
17 right to present any defenses that you may have or the right
18 to appeal any pretrial motions.
19       Do you understand your right to a jury trial?
20 A    Yes, ma'am.
21 Q    Is it your desire to give up your right to a jury
22 trial and enter a plea of guilty to Count III?
23 A    Yes, ma'am.
24 Q    Are you sure?  You had some hesitation when you looked
25 at counsel.

Halloway - Guilty Plea 5

1  A    I wasn't sure what you were saying.
2  Q    I am asking you if you wish to enter a plea of guilty
3  to Count III of the indictment?
4  A    Yes, ma'am.
5         THE COURT:  There is a plea agreement in this
6  matter.  Mr. Behe, will you please state the essence of the
7  plea agreement?
8         MR. BEHE:  Yes, Your Honor.  This plea agreement
9  calls for Mr. Halloway to withdraw his plea of not guilty as
10 to Count III and enter a plea of guilty to that count.
11        In exchange for doing so, the United States
12 agrees that at the time of sentencing to move for the
13 dismissal of all of the counts in the indictment.
14        The United States has also agreed that if
15 Mr. Halloway can demonstrate that he has accepted
16 responsibility to the satisfaction of the Probation Office
17 and the United States Attorney's Office, then we would
18 recommend to the Court that he receive a two level reduction
19 in his offense level.
20        Mr. Halloway understands, however, that that is
21 entirely up to the Court, whether he is entitled to any
22 reduction, and that if the Court determines he is not
23 entitled to a two level reduction, that would not be a basis
24 for him to withdraw his plea of guilty as to Count III.
25        Mr. Halloway has also agreed to cooperate with

Halloway - Guilty Plea                                        6

the United States.  The United States has agreed that if Mr. Halloway's cooperation amounts to what is referred to as substantial assistance, then the United States would be in a position to file a motion to further reduce his sentence pursuant to Section 5K1.1 of the Sentencing Guidelines.

As with the acceptance of responsibility provision, Mr. Halloway understands that even if the United States should file a motion pursuant to Section 5K1.1 of the guidelines, the granting of that motion is entirely up to the discretion of the Court.  And even if the Court would grant that motion, the amount of reduction, if any, is also entirely up to the discretion of the Court.  And Mr. Halloway will not have a basis to withdraw his plea of guilty should Your Honor number, one, not grant that motion at all, or two, with Your Honor granting the motion not depart to a level to which he would be satisfied.

I believe that is essentially the terms of the plea agreement.

BY THE COURT:

Q    Is that your understanding of the plea agreement?

A    Yes.

Q    Have there been any promises made to you that haven't been set forth in writing in the plea agreement?

A    No, ma'am.

Q    Has anyone you know promised you what your sentence

Halloway - Guilty Plea 7

1  would be?

2  A    No, ma'am.

3  Q    In that regard, do you understand that the maximum
4  penalty for this offense would be imprisonment of up to
5  forty years, a fine of two million dollars, or both, a term
6  of supervised release, costs of prosecution, denial of
7  certain federal benefits and an assessment of one hundred
8  dollars; do you understand that?

9  A    Yes, ma'am.

10 Q    Do you further understand that Count III carries a
11 mandatory minimum term of imprisonment of five years?

12 A    Yes, ma'am.

13 Q    Do you further understand that there are Sentencing
14 Guidelines which this Court must follow, that I cannot
15 depart from those Guidelines except under special
16 circumstances, and one of those could be if the government
17 files a petition for downward departure; do you understand
18 that?

19 A    Yes, ma'am.

20 Q    Has anyone estimated what your guideline sentence
21 would be?

22 A    No, ma'am.

23 Q    Do you understand that we will not know what your
24 guideline will be until after the presentence report is
25 concluded?  And if the guideline that I find applies to you

1  is dissatisfied by you, you cannot withdraw your guilty
2  plea; do you understand that?
3  A    Yes, ma'am.
4  Q    I show you a document entitled Plea Agreement and ask
5  if you have reviewed that with Mr. Arcuri?  Is that your
6  signature?
7  A    Yes, ma'am.
8  Q    Have you, yourself, reviewed that, or has it been read
9  to you by Mr. Arcuri?
10 A    I read it myself.
11 Q    Do you have any questions of me concerning anything in
12 that document?
13 A    (No response.)
14 Q    Is there anything in there that you may not understand
15 that you need clarified by me?
16 A    I fully understand, Your Honor.
17 Q    You are charged in Count III on or about March '97 up
18 until September of '97 in Harrisburg of conspiring with
19 others to manufacture and distribute and possess to
20 distribute in excess of a hundred kilos of marijuana.
21          Mr. Behe, would you state for the record the
22 facts in support of this charge?
23          MR. BEHE:  Yes, Your Honor.  Had this matter
24 proceeded to trial, the evidence would have established that
25 Mr. Halloway who was a Harrisburg resident distributed in

1  excess of a hundred kilograms of marijuana between March and
2  I believe perhaps even up to November of 1997; although, the
3  count of the indictment says on or about -- ends at
4  September 11th, 1997.
5       The information about Mr. Halloway was developed
6  through a confidential informant who was working for the
7  Office of Attorney General's Bureau of Narcotics
8  Investigation and who made several purchases of marijuana
9  from Mr. Halloway.
10      Numerous conversations between this confidential
11 informant and Mr. Halloway were recorded.  The source of the
12 marijuana in California has already entered a plea of guilty
13 and was prepared to testify again Mr. Halloway, as was the
14 confidential informant.
15      The BNI agents recovered multiple Western Union
16 wire transfers of money from Mr. Halloway to the source.
17 And finally, Mr. Halloway's house was searched pursuant to a
18 search warrant.  And Mr. Halloway was observed throwing a
19 box with approximately eight pounds of marijuana out of the
20 bedroom window.
21      Two loaded handguns were recovered from under the
22 mattress on the bed where Mr. Halloway was sitting.
23 Mr. Halloway in   covered the investigators where the guns
24 were located.
25      So essentially the testimony would be from

1  coconspirators, a confidential informant, evidence gathered
2  by way of a search warrant, tape recorded conversations and
3  controlled purchases of marijuana from Mr. Halloway.
4         In that regard, I think it important as part of
5  the plea agreement, and what Your Honor had noted as well to
6  Mr. Halloway, that he was surrendering his right to file any
7  pretrial motions in this matter.
8         The case had been before the Court of Common
9  Pleas where certain pretrial motions seeking to suppress
10 some of the tape recorded conversations were filed and were
11 successful based on state law that required a State Court
12 Judge to approve the recording, even consensual recordings,
13 if it happened to be within the home of the particular
14 individual.
15        As a result of those rulings, the United States
16 Attorney's Office adopted the case and the prosecution.
17 Mr. Halloway has not filed any motions here in Federal
18 Court, but I think it is important to note that that is not
19 federal law and that would not have provided a basis for
20 Mr. Halloway to suppress those.
21        Nonetheless, I want to make sure he understood he
22 had the right to file those motions.  Do you understand by
23 pleading guilty, you give up that right to file a motion
24 challenging those recordings; is that true?
25        THE DEFENDANT:  Yes.

THE COURT: As well as the search of the house. If you had any question concerning the legality of the search of your home, you could have also filed a motion to suppress. You understand you are giving up that right, also?

THE DEFENDANT: In the federal system?

THE COURT: Yes, sir.

THE DEFENDANT: Yes, ma'am.

THE COURT: What took so long? This is two years later.

MR. BEHE: Four. It worked its way through the State Court system with a number of trial continuances. At one point, Mr. Halloway moved to discharge his counsel. I think it was Mr. Russo.

THE DEFENDANT: Yes, sir.

MR. BEHE: He was allowed out of the case. Another attorney got in. There were a number of delays along those lines. As the case developed, additional individuals were arrested and cooperated. It just kept moving back.

It wasn't until recently with the decision of Judge Turgeon that we were even approached about becoming involved in the case.

THE COURT: Is there a disagreement over the one hundred kilograms?

Halloway - Guilty Plea                                    12

         MR. ARCURI:  None that I have from my client.
Your Honor, he has agreed with that.
BY THE COURT:
Q    Mr. Halloway, did you beginning in March of '97
through at least September of '97 conspire with others, in
particular Lipton Gordon, Robert Campbell and Chad Smith and
others to manufacture, distribute and possess with the
intent to distribute in excess of one hundred kilograms of
marijuana?
A    Yes, ma'am.
Q    Do you have any question about these charges?
A    I am curious about just the amount.  I am just curious
where the numbers came from.
Q    You are entitled before sentencing to have a hearing
to establish the amount.
A    I don't know about the Robert Campbell guy.  I am
familiar with the rest.
Q    You are familiar with Lipton Gordon and Chad Smith?
A    Yes, ma'am.
Q    Do you understand in a conspiracy that you could still
be guilty of a conspiracy even though you don't know all the
members of the conspiracy?
A    Yes, ma'am.
Q    Do you understand that a conspiracy is an agreement
among two or more persons to do an illegal act?

```
                        Halloway - Guilty Plea                  13
 1    A     Yes, ma'am.
 2    Q     The illegal act is the distribution of the marijuana;
 3    do you understand?
 4    A     Yes, ma'am.
 5    Q     Do you have any other questions about the charge?
 6    A     That would be all.
 7           THE COURT:  AND NOW this eighth day of September,
 8    2000, the Court finds that the defendant is acting
 9    voluntarily and not as a result of force or threats or
10    promises apart from the plea agreement, that he understands
11    his rights, the consequences of his plea and voluntarily
12    waives his right to trial.
13           The Court is satisfied that the plea has a basis
14    in fact and contains all of the elements of the crime
15    charged.  The Court therefore permits the revocation of the
16    not guilty plea, accepts the plea of guilty to Count III in
17    the indictment and directs the entry of judgement of guilty
18    on the plea.
19           Sentencing is deferred pending receipt by the
20    Court of a presentence report.
21           MR. BEHE:  Your Honor, I would like to state on
22    the record some concern I have to Mr. Halloway's statement
23    about the amount.
24           Since the United States Supreme Court's decision
25    in Apprendi, we have to establish at trial the amount proved
```

1  beyond a reasonable doubt.  But at a guilty plea proceeding,
2  normally the amount is agreed upon so that the defendant is
3  admitting to a particular amount or a particular range.
4          In this matter, a hundred kilograms is a little
5  more than two hundred pounds that was distributed or a part
6  of the conspiracy over that period of time that involved you
7  and other individuals.  Other individuals distributed some,
8  and you distributed some, and you are all part of the
9  conspiracy.  You are all responsible for that total amount.
10 Do you understand that?
11         THE DEFENDANT:  Everybody?
12         MR. BEHE:  Yes, everybody.  What everybody is
13 doing.  Do you understand that?
14         THE DEFENDANT:  Yes.
15         MR. BEHE:  What the information charged here was
16 that the conspiracy involved more than a hundred kilograms,
17 which is somewhat over two hundred pounds.  Do you admit
18 that that was the amount that was involved in part of
19 conspiracy, at least that amount?
20         THE DEFENDANT:  I would say less.  But the agent
21 I spoke to before, he said that the way the feds do it, they
22 talked to a couple of people I guess like you just said, and
23 whatever Rambo figures, that is what they use in the federal
24 system.  It is different than the state.
25         MR. BEHE:  What I would expect I would be able to

prove at the time of sentencing would be that you distributed more than one hundred kilograms, but less than a thousand kilograms. It would be like in the five, six hundred pound range. Not you personally --

THE DEFENDANT: I understand.

MR. BEHE: -- but all those involved in the conspiracy. Do you agree to the amount being more than one hundred kilograms of marijuana that was involved in the conspiracy?

THE DEFENDANT: I am not sure what those guys, exactly what they dealt with. Just me. I understand what you mean.

MR. BEHE: I know you might understand. Do you agree it was more than a hundred kilograms?

THE DEFENDANT: Yes, sir.

MR. BEHE: That takes care of my concern.

THE COURT: Okay.

MR. ARCURI: Your Honor, for the record, what I explained to him was the involvement of the other people, the allegations, not that he personally distributed that amount, but the entire conspiracy could be proven by all of the facts that Mr. Behe could present. And he has in fact told me that that is --

BY THE COURT:

Q    You knew there were other people involved in this

1    conspiracy to distributing marijuana?

2    A    Yes.

3    Q    Besides yourself?

4    A    Yes, ma'am.

5         THE COURT:   Court is in recess.

6         THE CLERK:   Court is in recess.

7         (Whereupon, the proceedings were concluded.)

8

9

10        I hereby certify that the proceedings and
11   evidence are contained fully and accurately in the notes
12   taken by me on the trial of the above cause, and that this
13   copy is a correct transcript of the same.

14

15                              *Vicki L. Fox, RMR* (signature)

16                              Vicki L. Fox, RMR

17                              Official Reporter

18

19

20        The foregoing certification of this transcript
21   does not apply to any reproduction by any means unless under
22   the direct control and/or supervision of the certifying
23   reporter.

24

25