1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :
                                :
                                :
         v.                     :   00-CR-162-01
                                :
JAMES HALLOWAY,                 :
         Defendant              :


TRANSCRIPT OF PROCEEDINGS
SENTENCING


BEFORE:   HON. SYLVIA H. RAMBO, Judge

DATE:     February 9, 2001

PLACE:    Courtroom Number Three
          Federal Building
          Harrisburg, Pennsylvania


COUNSEL PRESENT:

WILLIAM BEHE, Assistant United States Attorney
   For - United States of America

FRANK ARCURI, Esquire
   For - Defendant

FILED
MAY 1 2 2003
PER_____
HARRISBURG, PA   DEPUTY CLERK

Vicki L. Fox, RMR
Official Reporter

Halloway - Sentencing                                                      2

1    MR. BEHE: Good afternoon, Your Honor. With
2    Your Honor's permission, I would call the case. It is the
3    United States of America versus James Halloway. This is at
4    docket number 1:CR-00162-01.
5        Mr. Halloway is present before you with counsel
6    Mr. Arcuri. This is the time and place set for sentencing
7    in this matter. There has been a presentence investigation
8    report prepared and made available to the parties for review
9    and comment.
10       Mr. Halloway, through counsel, has essentially
11   two outstanding objections. One is to the finding regarding
12   his role in the offense. Mr. Halloway thinks he is entitled
13   to a reduction for either a minor or a minimal participant.
14   And also an outstanding objection regarding the firearm that
15   was alleged to have been possessed by him or that he was
16   aware of during the course of this crime.
17       THE COURT: Mr. Halloway, have you reviewed the
18   presentence report with your counsel?
19       THE DEFENDANT: Previous to coming up here, we
20   was in the middle of talking about it. We didn't get a
21   chance to finish.
22       THE COURT: I will give you ten minutes to finish
23   reading the presentence report.
24       MR. ARCURI: Thank you.
25       THE COURT: Court is in recess.

1       (A recess was taken.)

2

3                           AFTER RECESS

4

5           THE COURT: Now Mr. Halloway, have you had enough

6   chance to review your presentence report with your counsel?

7           THE DEFENDANT: Yes, ma'am.

8           THE COURT: There were two objections filed. One

9   is the objection concerning the firearm that was located I

10  think under a mattress?

11          MR. ARCURI: Your Honor, Mr. Halloway asks to

12  withdraw that objection.

13          THE COURT: All right. And then there is another

14  objection concerning whether he is minor or minimal

15  participant and is entitled to a reduction on the offense

16  level. Do you wish to argue that?

17          MR. ARCURI: He wishes to argue that point, Your

18  Honor. He indicates to me that his role was minor. And

19  while he was in fact involved in the conspiracy, that his

20  role was not as great as has been alleged.

21          THE COURT: Do you wish to argue the point?

22          THE DEFENDANT: Yes, ma'am.

23          THE COURT: Go ahead.

24          THE DEFENDANT: In this conspiracy, I do

25  apologize to the Court for the inconvenience. In this

Halloway - Sentencing                                              4

1   conspiracy, I got involved, you know, introducing the
2   informant to other guys that was dealing because I wasn't in
3   the game.  But that gave me activity into the marijuana
4   distribution.
5           And by me having involvement with the two parties
6   gave me activity and the marijuana, you know.  But I wasn't,
7   you know -- I don't know how to say it, but what I did was
8   the guys would call me, and I would take them to another
9   individual.  But from time to time, I would purchase my own,
10  you know.  And I did buy my own marijuana.
11          THE COURT:  Did you introduce other people to a
12  supplier?
13          THE DEFENDANT:  Yes, ma'am.  And I did buy
14  marijuana for myself as well.
15          THE COURT:  Well, there is an indication that
16  between March and September of '97, there was anywhere from
17  between fifteen and fifty pounds of marijuana distributed
18  weekly by you and Mr. Gordon.  Do you dispute that?
19          THE DEFENDANT:  I thought my conspiracy was with
20  three people Shawn Shepard and Chad Smith, also.  Wasn't it?
21  I didn't know that.  I must have misunderstood you last
22  time.
23          THE COURT:  No.  According to some witnesses that
24  have given information in this that at the end of July of
25  '97, you and this witness -- I wish I knew who it was --

Halloway - Sentencing                               5

1   acted as -- you acted as a liaison.  This witness was a
2   liaison between you and Campbell, who was the source of the
3   marijuana.  The witness said that at least 30 pounds of
4   marijuana was coming from Los Angeles weekly, and that you
5   were the person who enable the distribution of the marijuana
6   that came from California.
7           Is that not correct?
8           THE DEFENDANT:  I know that Lipton Gordon, he was
9   dealing with some people from out of town.  And he was one
10  of the individuals that I would help, you know, distribute
11  it.  I helped him, you know, go to different people because
12  he didn't really know.  He is from New Jersey.  He didn't
13  really know the people around here that dealt with
14  marijuana.  Previously because I was dealing marijuana, I
15  knew who the people were.
16          THE COURT:  So you were the person who put Gordon
17  in contact with distributors; is that correct?
18          THE DEFENDANT:  You mean other people?
19          THE COURT:  You helped Gordon find people to help
20  distribute the marijuana?
21          THE DEFENDANT:  No.  I introduced him to other
22  people.
23          THE COURT:  Other dealers; right?
24          THE DEFENDANT:  Yes, ma'am.
25          THE COURT:  These were people would not have had

1    a supply of marijuana if you had not led them to Gordon, is
2    that correct, or introduced Gordon to them?
3           THE DEFENDANT:  They knew him.  Being me and him,
4    we hung around each other, they used to call him.  And he
5    would tell them, you know, that -- he would give them like
6    different excuses like he couldn't show up and stuff like
7    that.  And they would call me and ask -- and tell me to
8    convince him that they was okay people to deal with.
9           THE COURT:  Why do you feel that that gives you
10   the right to have a minor or minimal participant because
11   without you, those people wouldn't have been able to get the
12   drugs from Gordon; correct?
13          THE DEFENDANT:  They already knew each other, but
14   they didn't have his phone number.  They only dealt with him
15   when they seen him if he was hanging out or something like
16   that.  The only thing I did was exchange the phone numbers.
17          I wasn't the one actually selling the marijuana
18   to them.
19          THE COURT:  It doesn't make any difference.  If
20   you assisted Gordon in the distribution, it makes you
21   equally liable.
22          THE DEFENDANT:  I just exchanged the phone
23   numbers.  I might have gave the one guy his number and then
24   Biggie's number to the other guy.
25          THE COURT:  Do you wish to respond to this

Halloway - Sentencing 7

1 argument?

2 MR. BEHE: Yes. While the addendum refers to a
3 witness, it is clear that the witness is Kevin Gordon. The
4 presentence investigation report at paragraph ten describes
5 what Kevin Gordon told the investigators about his
6 involvement with the defendant after Gordon was arrested and
7 began to cooperate.

8 And if I might, paragraph ten says that --

9 THE COURT: Hold on a minute. Go ahead.

10 MR. BEHE: Paragraph ten says that Gordon
11 identified Robert Campbell as a source of supply in L.A. and
12 that Gordon had been getting marijuana from Campbell since
13 the beginning of '97.

14 He told agents that the defendant was picking up
15 the majority of the marijuana beginning in approximately
16 March of '97. Gordon told agents on more than one occasion
17 the defendant had complained about the prices of the
18 marijuana. It was at that time that Gordon told the
19 defendant about his source.

20 Gordon recalled the defendant asking to check on
21 prices, if they were low enough, and that the defendant
22 would fund the purchases. Gordon said that he acted as a
23 liaison between the defendant and Robert Campbell explaining
24 that he, meaning Gordon, would send money to Campbell via
25 Western Union, and Campbell would ship the marijuana to the

Halloway - Sentencing                                              8

1   defendant.
2              He recalled in July of 1997 they were shipping so
3   much money back via Western Union that they ended up
4   switching to send money UPS because it was more convenient.
5   Particularly, Gordon recalled that at the end of June and
6   July of '97, he and the defendant increased the amount of
7   marijuana that they were ordering.  And that by the end of
8   July, he and the defendant were getting at least 30 pounds a
9   week from Campbell.
10             During the course of the search, Your Honor
11  referred to paragraph seven, they found a number of UPS
12  labels and packaging materials, scales, everything that
13  indicates that the defendant was as involved in this as
14  Kevin Gordon and others have said he was.  And it belies his
15  attempt to minimize his role as he stands here before the
16  Court today.
17             THE COURT:  Do you have anything further,
18  Mr. Arcuri?
19             MR. ARCURI:  Not regarding these issues, no.
20             THE COURT:  Do you wish to speak generally on his
21  behalf?
22             MR. ARCURI:  Your Honor, what I can tell the
23  Court is this -- and I think Mr. Behe would certainly affirm
24  it.  That at his Rule five hearing, Mr. Halloway at that
25  point actually told me that he wished to resolve this

Halloway - Sentencing 9

1  matter. I, in turn, informed Mr. Behe. So his decision to
2  accept responsibility, and as I indicated earlier
3  apparently, disputes the detail of some of this, but he does
4  accept his responsibility. That actually began at his very
5  first opportunity to do so.
6      My understanding is he is still willing to
7  cooperate with the government and that he is willing to be
8  debriefed by the government for those purposes.
9      Mr. Halloway does have children, Your Honor. He
10 did serve approximately six to seven months on account of
11 these charges before they were dismissed by the
12 Commonwealth. I believe he was arrested in Dauphin County.
13 Apart from that, I don't believe I have anything further.
14     Perhaps Mr. Halloway wishes to --
15     THE COURT: Mr. Halloway, you may continue to
16 speak on your own behalf.
17     THE DEFENDANT: Your Honor, all I can say is I
18 apologize to the Court for the misunderstanding me and my
19 lawyer may have had as far as my accepting responsibility.
20 Because me and the Parole Officer had already discussed, you
21 know, these issues.
22     Twice I believe he came out, and everything was
23 fine until me and my lawyer had a misunderstanding about
24 some issues I wasn't aware of, that he was going to object
25 to that one issue. And I had --

1       THE COURT: Which issue?

2       THE DEFENDANT: About the weapon, about my
3  accepting responsibility because I had my family contact the
4  parole officer, and I did tell him what happened because he
5  sent me another psi. He said that my lawyer had objected to
6  one of the issues.

7       And I told my wife to tell him what me and him
8  discussed was final. I never had anything -- any objections
9  to the way he put the psi together. I do apologize to the
10 Court for the inconvenience and the misunderstanding and me
11 and my lawyer may have had.

12      As Mr. Behe know, I admitted in front of the
13 Court that I did have activity in the marijuana conspiracy.
14 And I recall Mr. Behe mentioning that also to you, that I
15 did admit it in court on the record, as well as I admitted
16 it to the Parole Officer.

17      THE COURT: Mr. Behe?

18      MR. BEHE: Yes, Your Honor.

19      THE COURT: First of all, address the acceptance
20 of responsibility.

21      MR. BEHE: I agree with Mr. Arcuri and the
22 defendant's account of when I first became aware that he
23 intended to resolve the matter by way of a plea as opposed
24 to taking a trial. That was the first time he appeared in
25 Federal Court before Magistrate Judge Smyser.

1        I never considered this a trial. I never had to
2   prepare for it as a trial. Matters were continued simply
3   because of logistical concerns about getting the plea
4   agreement out, getting it signed, getting it returned. I
5   never had to expend any time preparing this for a trial.
6        Although -- I know he was denied acceptance of
7   responsibility because of the gun, has cleared that up or at
8   least offered an explanation that there was some confusion
9   with his counsel.
10       I guess it could still be argued that his
11  statements today about his involvement in the conspiracy are
12  so out of touch with what the evidence would show that
13  although he has admitted his involvement, his attempt to
14  minimize and explain it away might cause somebody to
15  reconsider whether or not he has accepted responsibility for
16  his overall involvement in the scheme, but I will not make
17  that argument.
18       THE DEFENDANT: I just told the Judge that I had
19  involvement with this particular person. I was under the
20  impression the last time that it was with these other -- my
21  conspiracy was with these other guys. I wasn't aware that
22  the conspiracy was with Lipton Gordon.
23       When we was here before, you mentioned about --
24  you and the Judge had mentioned that the conspiracy was all
25  of us together. And that is what gave me the impression

1   that conspiracy was with them guys. I wasn't under the
2   impression that it was with Lipton Gordon alone.
3            MR. BEHE: The presentence investigation makes it
4   clear in a statement that who all was involved in the
5   criminal conspiracy, and there was no objection filed
6   indicating that you were not a participant with those
7   individuals in the conspiracy.
8            As a matter of fact, Count III indicates --
9            THE COURT: Gordon is in that one.
10           MR. BEHE: Yes, unindicted conspirators Lipton
11  Gordon, Chad Smith and other people. So the indictment --
12  the count of the indictment to which you pled specifically
13  identifies those people as being unindicted coconspirators.
14           THE DEFENDANT: But the Judge just mentioned just
15  Lipton Gordon. That's what confused me. I thought she was
16  just talking about him. When according to the paperwork, it
17  is everybody.
18           MR. BEHE: Yes.
19           THE COURT: Let me see you.
20           (Judge confers with John Vought.)
21           MR. BEHE: Your Honor, could I just add for the.
22  Record that with regard to both issues, I did have Agent
23  Lowe from the Bureau of Narcotics Investigation here in
24  court today prepared to testify had there been a need to
25  present testimony concerning the firearm.

1  THE COURT: Thank you.

2  MR. BEHE: And role in the offense.

3  THE COURT: Okay. Anything further from anyone?

4  MR. BEHE: No, Your Honor.

5  MR. ARCURI: No, Your Honor.

6  THE COURT: AND NOW this 9th day of February, the
7  year 2001, the defendant appearing in court for purposes of
8  sentencing pursuant to the Sentencing Reform Act of 1984, it
9  is the judgement of the Court on Count III that the
10 Defendant James Halloway is hereby committed to the custody
11 of the Bureau of Prisons to be imprisoned for a term of 125
12 months.

13          The Court finds that the defendant has some
14 ability to pay a fine. Accordingly, it is further ordered
15 that the defendant pay to the United States the sum of
16 $800.00, consisting of a fine of $700.00 and a special
17 assessment of $100.00.

18          The fine and special assessment shall be paid
19 through the Clerk of Court, are due in full immediately and
20 are payable during the period of incarceration with any
21 balance to be paid within two years from release from
22 custody.

23          Upon release from imprisonment, the defendant
24 shall be placed on supervised release for a term of four
25 years. Within 72 hours of release from the custody of the

1   Bureau of Prisons, the defendant shall report in person to
2   the Probation Office in the District to which the defendant
3   is released.
4          While on supervised release, the defendant shall
5   comply with the standard conditions that have been adopted
6   by this Court and with the following additional condition:
7   One, Defendant shall pay any balance of the fine imposed by
8   this judgement which remains unpaid at the commencement of
9   the term of supervised release in minimum monthly
10  installments of no less than $50.00.
11         The defendant shall submit to one drug test
12  within fifteen days of release from custody and at least two
13  periodic drug tests thereafter.
14         The following statement of reasons is placed on
15  the record for the sentence that has been imposed:  The
16  Court adopts the factual findings and the guideline
17  application in the presentence report except that the Court
18  will grant a three point reduction for acceptance of
19  responsibility.
20         The fine is below the guideline range because of
21  the defendant's inability to pay.  The sentence is within
22  the guideline range.  That range exceeds 24 months, and the
23  sentence at the high end of the guideline range is imposed
24  because of his borderline acceptance of responsibility as
25  far as his participation in the conspiracy.

Halloway - Sentencing                                       15

1        Now, Mr. Halloway, you can appeal your conviction
2   if you believe that your guilty plea was somehow unlawful or
3   involuntary or that there was some other fundamental defect
4   in these proceedings that was not waived by your guilty
5   plea.
6        You also have a statutory right to appeal your
7   sentence under certain circumstances, particularly if you
8   think your sentence is contrary to law.  You have ten days
9   from this day in which to file a notice of appeal.
10       Mr. Arcuri will continue to represent you on
11  appeal should you wish to take an appeal.  You may also
12  request the Clerk of Court to prepare and file a notice of
13  appeal on your behalf.
14       Some counts need to be dismissed?
15       MR. BEHE:  Yes.  Counts I and II of the
16  indictment.
17       THE COURT:  They are dismissed.
18       MR. ARCURI:  Thank you, Your Honor.
19       THE COURT:  Court is adjourned.
20       THE CLERK:  Court is adjourned.
21       (Whereupon, the proceedings were concluded.)
22
23
24
25

1

2        I hereby certify that the proceedings and

3   evidence are contained fully and accurately in the notes

4   taken by me on the trial of the above cause, and that this

5   copy is a correct transcript of the same.

6

7              *Vicki A Fox, RMR* (signature)

8              Vicki L. Fox, RMR

9              Official Reporter

10

11

12        The foregoing certification of this transcript

13   does not apply to any reproduction by any means unless under

14   the direct control and/or supervision of the certifying

15   reporter.